OPINION
{¶ 1} Defendant-appellant, JPMorgan Chase Bank ("JPMorgan"), appeals the *Page 2 
decision of the Butler County Court of Common Pleas declaring the parties' rights in their mutual ownership of a building. We affirm the decision of the trial court.
 {¶ 2} The parties to this action include Fraser William Maxwell, Trustee, Arthur Cross, Trustee, and Carl Minton, Trustee, who represent the interests of Invincible Lodge 108, a local branch of the Independent Order of Oddfellows ("the Oddfellows"). Some years ago, the Oddfellows began the process of selling its interest in a three-story building located in Oxford, Ohio to David and Renee Maxfield who planned on converting a portion of the building into residential rental housing. JPMorgan owns the rest of the building and operates a branch of Chase Bank on the first floor. After the Oddfellows filed suit, the Maxfields joined the action as third-party plaintiffs and have been active participants in the suit since intervening.
 {¶ 3} Before the magistrate considered the merits of the case, all three parties submitted a stipulation of facts for trial purposes and asked the court to quiet title and declare the parties' rights and responsibilities in their collective ownership of the building. While the magistrate heard oral arguments regarding the legal points of contention, there were no factual disputes for the magistrate to consider.
 {¶ 4} By and through the stipulated facts, the parties agreed that the Oddfellows are owners of the north 31 feet of the second floor and the entire third floor of the building, while JPMorgan owns the south 48 feet of the second floor, the entire first floor, and the basement. The deed that described the building's ownership also set forth that the parties would have joint use of the stairway that connects the ground level to the second floor. The parties also agreed that neither party disputed the clarity of the other's title in the building, and further stipulated to the authenticity of the deeds offered *Page 3 
to the court as evidence of ownership rights.
 {¶ 5} Though the Oddfellows and JPMorgan have shared the building, they had neither a written agreement allocating obligations for repair, maintenance, or use of the building nor an agreement governing the potential total loss of the building other than the original Articles of Agreement that granted the Oddfellows the right to rebuild. The parties also operate in the absence of a written agreement allocating JPMorgan's right to access the roof through the third floor or the Oddfellows' right to access the basement (the entrance point for water and sewer services) through the first floor.
 {¶ 6} However, even in the absence of such written agreements, JPMorgan has installed heating and air conditioning equipment on the building's roof, as well as various line sets and wiring to connect the equipment to its portion of the second and first floors. The Oddfellows have granted JPMorgan access to the roof, through a hatch located on the third floor, to service and maintain the equipment.
 {¶ 7} On February 15, 2005, the Maxfields entered into a purchase contract with the Oddfellows to buy its interest in the building, and the Maxfields stipulated that their future plans for the building include converting their portion into residential rental properties with possible long-term plans to sell individual residential units. Because of these plans, the parties stipulated that it will be necessary for the Maxfields and JPMorgan to coordinate the renovation plans to allow the Maxfields access to the building's mutually utilized utilities, as well as cooperation or consent to install various safety measures necessary to comply with Oxford's City Code.
 {¶ 8} Based on the collective need to determine the parties' rights and responsibilities, the Oddfellows filed suit and JPMorgan responded by filing a *Page 4 
counterclaim and later proposed a declaration of ownership in which it set forth proposed terms for the joint ownership. After hearing the parties' oral arguments, the magistrate issued a decision in which he quieted title and declared the parties' rights and responsibilities, which would become binding on the Maxfields by virtue of their proposed purchase of the Oddfellows' interest in the building.
 {¶ 9} In response, JPMorgan filed objections to the magistrate's decision, arguing that the magistrate erred by determining that the parties owned the building as tenants in common, granting reciprocal easements, and that the decision failed to adequately address the parties' concerns. The trial court considered JPMorgan's objections, and after overruling each, adopted the magistrate's decision in full. It is from this decision that JPMorgan now appeals, raising the following assignment of error:
 {¶ 10} "THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE OBJECTIONS TO THE MAGISTRATE'S DECISION OF DEFENDANT-APPELLANT, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION."
 {¶ 11} In its sole assignment of error, JPMorgan asserts that the trial court erred by adopting the magistrate's decision quieting title and defining the parties' rights and responsibilities regarding the building. This argument lacks merit.
 A. Quiet Title {¶ 12} Quiet title actions are reviewed under a manifest weight of the evidence standard, Kaufman v. Giesken Ent., Ltd., Putnam App. No. 12-02-04, 2003-Ohio-1027, unless the reviewing court must apply a de novo standard because resolution of the appeal involves construction of the deed. Turpen v. O'Dell (Oct. 14, 1998), Washington App. No. 97CA2300. Because the parties stipulated to the ownership interests, as set *Page 5 
forth in the uncontested deeds, the trial court did not construe the deeds and instead, quieted title based upon the stipulation. Therefore, the resolution of this appeal does not involve construction of the deed and will instead turn on the weight of the evidence. A judgment supported by competent, credible evidence will not be overturned as being against the weight of the evidence. C.E. Morris Co. v. FoleyConst. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 13} The court's decision to quiet title as it did is supported by competent, credible evidence. In the stipulations, the parties set forth their respective ownership interests in the building. Each stipulation described the interest in detail, including a citation to the plat book that contained the deed of record. These stipulations to the property's description and resulting ownership interests were mirrored in the magistrate's decision. Specifically, the court found that there was "no dispute between the parties as to the title of the Oddfellows and JP Morgan to their respective portions of the Oxford Building."
 {¶ 14} After including the stipulated descriptions, the court concluded, "stated otherwise, title is hereby quieted in JP Morgan with respect to the basement, first floor and the south 48 feet of the second floor of the Oxford Building. Title is further hereby quieted in the Oddfellows with respect to the north 31 feet of the second floor and the entire third floor of the Oxford Building." As the parties stipulated these ownership interests, the decision to quiet title was supported by the evidence.
 B. Declaratory Judgment {¶ 15} Initially, we note that the parties contest the proper standard of review this court should apply while reviewing the court's decision regarding the parties' rights and *Page 6 
responsibilities. While JPMorgan asserts that the dispute involves only legal questions so that a de novo review is proper, the Oddfellows and Maxfields assert that we should review the court's decision for an abuse of discretion.
 {¶ 16} In Mid-American Fire Cas. Co. v. Heasley, 113 Ohio St.3d 133,2007-Ohio-1248, the Ohio Supreme Court definitively settled whether a de novo review or abuse of discretion standard applies in declaratory judgment actions. After considering the proper standard to apply, the court declined to adopt a de novo review and instead, "reaffirmed] that declaratory judgment actions are to be reviewed under an abuse-of-discretion standard." Id. at ¶ 14. An abuse of discretion connotes more than a mere error of law or judgment, and instead, requires that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} According to R.C. 2721.03, "any person interested under a deed * * * may have determined any question of construction or validity arising under the instrument * * * and obtain a declaration of rights, status, or other legal relations under it." In its first amended counterclaim against the Oddfellows' complaint for declaratory judgment, JPMorgan asked the court to determine the parties' "rights, duties, and obligations that flow from their respective ownership and easement interests in the subject building."
 {¶ 18} Before delineating the parties' rights and responsibilities per their request, the court recognized the unique situation presented, and that the parties could not "effectively use [their] property without dependence upon the other party." Based on the ownership interests created by their respective ownership, the court found that JPMorgan and the Oddfellows were tenants in common. *Page 7 
 {¶ 19} The court then issued the following orders: the parties would grant reciprocal easements of the upper floors over the lower floors and vice versa, the parties would share equally in the cost of the common stairwell's maintenance (unless the repairs were made necessary by the intentional or negligent acts of one party or the other), the parties would be responsible for maintaining their own portion of the interior of the building, neither party could make alterations to the exterior of the building without the consent of the other party, the parties would maintain pertinent insurance policies, cost of repair or replacement by intentional or negligent acts would fall upon the responsible party, the parties could file a partition action in the case of catastrophic loss if they are otherwise unable to agree to rebuild, and that each party should use their property as to preserve the quiet enjoyment of the other owner. The court also made its decision binding on the parties' successors or assigns so that the Maxfields will be required to follow the court's orders regarding the parties' rights and responsibilities should they purchase the Oddfellows' interest in the building.
 {¶ 20} While JPMorgan asks this court to modify the agreement in 15 different ways, [1] we decline to do so. Instead, the court did not abuse its discretion in setting forth the parties' rights and responsibilities, as each of the above-mentioned orders speak to the parties' interests in the building and how they are to conduct their common tenancy. Although the modifications JPMorgan now requests may further limit any concerns or ambiguity in the parties' tenancy, we are not in the position to rewrite the orders or to declare new rights or responsibilities. Instead, we agree with the trial court that the *Page 8 
parties are in a unique position and that their common ownership of the building presents the possibility for quandaries that will require continuing cooperation, communication, and compromise from all parties involved.
 {¶ 21} Even so, the court's decision is thorough, well-reasoned, and addresses the parties' concerns, as set forth in the complaints, and was not arbitrary, unconscionable, or otherwise unreasonable. Therefore, the court did not abuse its discretion by overruling JPMorgan's objections and adopting the magistrate's decision.
 {¶ 22} Having found that the court's decision to quiet title was supported by the evidence and that the court did not abuse its discretion by issuing the declaratory judgment as it did, JPMorgan's assignment of error is overruled.
 {¶ 23} Judgment affirmed.
Walsh, P.J., and Powell, J., concur.
[1] Some of the requests include: further defining the common areas, specifically requiring liability insurance, amending the reciprocal easements to include making improvements and providing notice, giving JPMorgan the power to direct restoration or rebuilding, establishing a procedure for restoration, and continuing the jurisdiction of the court over future interpretation and enforcement issues. *Page 1